THE STATE OF OHIO, APPPELLEE, *v.* BILLUPS, APPELLANT.

[Cite as State v. Billups (1979), 57 Ohio St. 2d 31.]

(No. 77-1291—Decided February 28, 1979.)

32

Mr. James R. Kingsley, prosecuting attorney, for appellee.

Mr. P. Eugene Long, II, for appellant.

HERBERT, J. Appellant's sole contention is that the trial court erred when it accepted his guilty plea without first orally and personally advising him of each of his constitutional and other rights pursuant to Crim. R. 11(C)(2). Citing *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, 358 N. E. 2d 601, appellant argues that such an error is prejudicial *per se* and in effect requires the automatic reversal of his conviction. We disagree.

At the outset of the guilty plea proceedings, appellant was apprised fully of the charges against him, the minimum and maximum penalties, and was informed of his right to an indictment by a grand jury. The record shows that appellant was literate, having acquired a ninth grade education, and was in attendance when the trial judge advised the previous defendant of his rights immediately prior to appellant's appearance. When questioned by the trial judge whether appellant desired a recitation of rights on his behalf, appellant responded, "No, I understand." Reassuring the court that he understood what had transpired and that his pleas were voluntarily submitted,[1] appellant thereafter executed, in open court

---

[1]"THE COURT: The next 4 cases are 75CR 194, 195, 196 and 197, State of Ohio v. Allen Scott Billups, which the defendant is charged in these cases with two offenses of aggravated burglary and two offenses of grand theft. And, these are upon bills of information that have been filed. These cases came on for hearing once before and upon inquiry the defendant indicated he did not wish to plead at that time. So, the matter was continued for grand jury action. Mr. Hill, who represents Mr. Billups indicated today that Mr. Billups wishes to proceed on the bills of information in each of these cases.

"Now, Mr. Billups I've got to make some explanations to you here. You are charged here with two cases of aggravated burglary and two cases of grand theft. Now, aggravated burglary is what is known as a felony of the 1st degree. Each of them can carry a sentence in a penal institution of 4, 5, 6, 7 years minimum up to 25 years maximum and can carry up to a $10,000.00 fine.

"Each of the grand thefts, which is a felony of the 4th degree, each can carry a sentence of six months, a year, a year and a half to two years minimum up to five years maximum and up to a $2500.00 fine. There being 4 cases the court would have to determine whether the sentences would run concurrently or consecutively. If they run con-

with defense counsel present, a written waiver which clear-

currently, you would be serving them all at the same time. If they run consecutively you would have to serve one before you start serving the others.

"Now, those are the offenses. Now, first I want to make some more explanations. You had a hearing over in Municipal Court on these cases and you were bound over to the grand jury of this county. Now, the grand jury will meet tomorrow and consider these cases along with the other cases. A grand jury is composed of 9 people who will determine whether or not there is sufficient evidence to return an indictment against you, see. Now, if they would find the evidence is not sufficient they would return no indictment and that would be the end of the case. If they would find the evidence sufficient to return an indictment, they would return what is known as a true bill, and then you would be required to plead on that and the cases would be tried subsequently on that. See, the first thing we got to know is if you want to proceed and have your case considered by the grand jury or whether you wish to waive that and come on the bills of information. Do you understand what I have said about that?

"THE DEFENDANT: Yes.

"THE COURT: What do you want to do about that?

"THE DEFENDANT: I want to go on a bill of information.

"THE COURT: I think Mr. Gerhardt has waivers there indicating that. I want you to read those and make sure you understand them. If that is what you want to do then you will sign them. If you have any questions you can ask Mr. Hill or myself.

"MR. GERHARDT: Let the record show that the defendant in State of Ohio v. Allen Scott Billups, case No. 75 CR 194, 195, 196, 197 has signed a waiver of indictment in each of those respective cases in open court.

"THE COURT: They will be witnessed by the court and filed and made a part of the record. Now, Mr. Billups, there are some more explanations I want to make to you. Now, has he had these bills for more than 24 hours?

"MR. HILL: We will waive the reading of them and acknowledge receipt of them.

"THE COURT: And then you will enter what plea?

"MR. HILL: Enter a plea of guilty to all four bills of information. Your Honor, we will withdraw our former pleas of not guilty.

"THE COURT: Now, Mr. Billups, you heard the statement of Mr. Hill that you wish to enter a plea of guilty to each of these offenses. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, you had previously entered pleas of not guilty. You were in here awhile ago when I explained to the other man

ly enumerated and explained appellant's rights and speci-

about his right to a jury trial and these various rights and the right of appeal. You heard that?

"THE DEFENDANT: Yes.

"THE COURT: Or do you want me to explain it again or do you understand it?

"THE DEFENDANT: No, I understand.

"THE COURT: By entering a plea of guilty you are admitting these charges and in each of these cases you are waiving all of those rights. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, let's go over these cases to be sure you understand each of these cases. Mr. Billups, you are charged on September 21st that you trespassed at the residence of John Barth, Lockbourne, Route 1, which was an occupied habitation, that you trespassed there with the purpose of committing a theft offense. That simply means aggravated burglary, a felony of the 1st degree. That you broke into that house with the intent to steal something.

"THE DEFENDANT: Yes.

"THE COURT: Now, you desire to enter a plea of guilty to that offense?

"THE DEFENDANT: Yes.

"THE COURT: The other one that you did the same thing at the residence of Vernon Bolender on that same date. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, do you desire to enter a plea of guilty to that?

"THE DEFENDANT: Yes.

"THE COURT: The other two charges, each of those residences, that you took certain items. Well, here at Bolenders you took old coins and bills, a wristwatch, a couple of wristwatches, 3 wristwatches, a necklace, ring—that you took these items and that these items have a value of more than $150.00. That is what is known as grand theft. Do you desire to enter a plea of guilty to that charge?

"THE DEFENDANT: Yes.

"THE COURT: The 4th one is that at the John Barth residence you took various items, some half dollars, some shells, silver dollars, shirts, trousers, Trail Bologna, Coca Cola, buns, beer and a wristwatch. These all had a value of more than $150.00. That is what is known as grand theft. Do you desire to enter a plea of guilty to that charge?

"THE DEFENDANT: Yes.

"THE COURT: Now, these are your voluntary pleas, Mr. Billups. There haven't been any promises made to you other than what was said here in court?

"THE DEFENDANT: No.

fied that appellant was waiving them.[2]

Even though, as stated in Crim. R. 11(C)(2), trial

"THE COURT: How far did you go in school, Mr. Billups?

"THE DEFENDANT: The 9th grade.

"THE COURT: So you can read and write and understand what has been done here. Do you have any questions as to what has taken place here?

"THE DEFENDANT: No.

"THE COURT: All right, there is a waiver of jury trial and an explanation of these rights. If that is what you want to do after you have read them you will sign them. If you have any question about them you will ask Mr. Hill or myself about it.

"MR. GERHARDT: Let the record show that in cases No. 75CR 194, 195, 196, 197, State of Ohio v. Allen Scott Billups, that the defendant in each of these respective cases has signed a waiver of jury trial on a plea of guilty and has also signed an explanation of rights form, all in open court.

"THE COURT: It will be witnessed by the court and filed and made a part of the record. The pleas of guilty to each offense will be accepted and noted. * * *"

[2]"WAIVER OF JURY TRIAL

"The undersigned, who is the defendant in the above case, being now in open court, and having entered a PLEA OF GUILTY to the charge in the above case, hereby VOLUNTARILY WAIVES AND RELINQUISHES HIS RIGHT TO A TRIAL BY JURY.

"* * *

"EXPLANATION OF RIGHTS

"I fully understand that under the laws of the State of Ohio I have a constitutional right to a trial by jury and that by signing this waiver, I no longer have such a right and that the Judge can sentence me for the crime charged without a trial. I further understand that by entering a plea of guilty, I hereby WAIVE AND RELINQUISH the following RIGHTS:

"1. Presumption of Innocence: I am presumed innocent until proven guilty.

"2. Burden of proof: The prosecutor must prove beyond a reasonable doubt that I am guilty.

"3. Speedy and Public Trial: I have a right to a speedy and public trial by jury, or to a speedy and public trial before judge if I waive a trial by jury.

"4. Confrontation: I have a right to confront any witnesses against me and I have a right to question them.

"5. Compulsory process: I have a right to have any witnesses that may be favorable to my case brought to my trial.

courts should in every cause ascertain the validity of waivers, of constitutional and non-constitutional rights, by specific oral interrogation of the defendant, there is no constitutional mandate that such be done. Numerous authorities have refused to *ipso facto* invalidate a guilty plea merely because the trial court failed to conduct a full colloquy with the defendant with regard to each of his rights,[3] or because the court accepted a written document from the defendant as evidence that he had been apprised of and knowingly waived his constitutional rights.[4]

Crim. R. 11(C)(2) prohibits, in felony cases, a court

"6. Self-Incrimination: I need not testify against myself and the fact that I do not cannot be used against me.

"I further state that: (1) there have been no threats, promises or inducements to get me to plead guilty and (2) I have a right to counsel, if desired, (3) I understand the nature of the charge, whether or not probation can be granted, and its penalty."

[3]See, *e. g., State* v. *Stone* (1975), 43 Ohio St. 2d 163, 169-70, 331 N. E. 2d 411; *State* v. *Cooper* (1976), 196 Neb. 728, 246 N. W. 2d 65; *Twyman* v. *State* (1974), 293 Ala. 75, 300 So. 2d 124; *State* v. *Jelks* (1969), 105 Ariz. 175, 461 P. 2d 473; *Stinson* v. *Turner* (C. A. 10, 1973), 473 F. 2d 913; *United States* v. *Frontero* (C. A. 5, 1971), 452 F. 2d 406, 415; *United States* v. *Sherman* (C. A. 9, 1973), 474 F. 2d 303.

[4]See, *e. g., Commonwealth* v. *Myrick* (1976), 468 Pa. 155, 360 A. 2d 598; *State* v. *Cooper, supra*; *Twyman* v. *State, supra*; *Williams* v. *State* (Tex. Crim. App. 1975), 522 S. W. 2d 483; *Williams* v. *State* (1975), 263 Ind. 165, 325 N. E. 2d 827; *United States* v. *Sherman, supra*; *Moore* v. *Anderson* (C. A. 10, 1973), 474 F. 2d 1118. In *McCarthy* v. *United States* (1969), 394 U. S. 459, the Supreme Court construed the provisions of F. R. Crim. P. 11, a rule substantially similar to Ohio Crim. R. 11. The court, at page 465, stated what is considered to be the two purposes of this procedural rule:

"* * * First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. * * *"

In *Halliday* v. *United States* (1969), 394 U. S. 831, the Supreme Court refused to apply *McCarthy* retroactively, and recognized, at page 833, that a "large number of constitutionally valid convictions * * * may have been obtained without full compliance with Rule 11 * * *."

38

from accepting a guilty plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

However, in *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, 364 N. E. 2d 1163, this court held that when a trial court fails to adhere in every respect to the dictates of Crim. R. 11, but the record reveals that the court has "substantially complied" with the requirements of the Rule, absent a showing of prejudice to the rights of the defendant, the entered plea will not be set aside. Citing *United States* v. *Brogan* (C. A. 6, 1975), 519 F. 2d 28, Justice Celebrezze concluded that a "rote recitation of the rule was not necessary * * *." *Stewart,* at page 92.

The holding of *Stewart* is applicable to the cause at bar. The record herein demonstrates that the procedure employed by the trial court complied substantially with Crim. R. 11 (C) (2). The result reached in *Caudill, supra,* and urged by appellant, if carried to a literal conclusion without regard to the facts in the case,[5] represents a regres-

---

[5]*Caudill* found that a written waiver executed by the defendant prior to his appearance in court was an impermissible substitute for the court's duty under Crim. R. 11 to conduct a personal interrogation of the defendant before accepting his plea. Recognizing both the "nature of the offense charged and the apparent limited mental capacity" of

sion to the exaltation of form over substance at a time when our criminal justice system is already laboring under immense burdens. See *Chapman* v. *California* (1967), 386 U. S. 18, 22. "In all such inquiries, '[m]atters of reality, and not mere ritual, should be controlling,' " *McCarthy* v. *United States* (1969), 394 U. S. 459, 468, at footnote 20.[6]

Consequently, a trial court does not commit prejudicial error under Crim. R. 11 (C) (2) by entering a judgment of conviction upon a plea of guilty where the record of the guilty plea proceeding affirmatively demonstrates that: (1) the defendant was represented throughout the proceedings by counsel; (2) the trial court conducted a discussion with the defendant, apprising him of the nature of the charges and the minimum and maximum sentences for each offense, and determining the voluntariness of the submitted plea;

the 18-year-old defendant in that cause, the court, at page 346, concluded that "meticulous adherence to the provisions of Crim. R. 11(C)" was required. Therefore, paragraph three of the syllabus in *Caudill* states: "The requirements of Crim. R. 11(C)(2) are not satisfied by a written statement by the defendant or by representations of his counsel." This conclusion related to the facts then before the court. Paragraph one of the *Caudill* syllabus already has been modified by *Stewart, supra.*

The Supreme Court of Colorado held in *People* v. *Marsh* (1973), 183 Colo. 258, 262-263, 516 P. 2d 431, as follows:

"It is our view that the Supreme Court of the United States did not intend in *Boykin* to inflict any straight jacket formalism upon the process of receiving guilty pleas in state prosecutions. Such formalism or ritual would be required if the defendant's arguments were to be accepted. This Court has heretofore declared that adherence to a formal ritual is not required by Crim. P. 11. * * * [O]ur Crim. P. 11 and the Constitution require only that a defendant be aware of the elements of the offense and that he voluntarily and understandingly acknowledge his guilt after being made aware of his various rights as outlined in Crim. P. 11."

See, also, *People* v. *Alvarez* (1973), 181 Colo. 213, 508 P. 2d 1267; *Morgan* v. *State* (Me. 1972), 287 A. 2d 592; *People* v. *Krantz* (1974), 58 Ill. 2d 187, 317 N. E. 2d 559. *Cf. Michigan* v. *Tucker* (1974), 417 U. S. 433; *Commonwealth* v. *Myrick, supra* (468 Pa. 155).

Furthermore, Crim. R. 52(A) provides, in pertinent part:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

(3) the trial court did not orally inform the defendant of each of his rights because the defendant acknowledged that he heard and understood the court's earlier colloquy with a previous defendant and did not desire his own recitation; (4) the defendant read and executed in open court, in the presence of defense counsel, a written document which clearly explained defendant's rights and stated that defendant was waiving them by entering his plea of guilty; and (5) the defendant was literate and had obtained a ninth grade education.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., P. BROWN, SWEENEY and McCORMAC, JJ. concur.

W. BROWN, J., dissents.

HOLMES, J., not participating.

McCORMAC, J., of the Tenth Appellate District, sitting for LOCHER, J.

WILLIAM B. BROWN, J., dissenting. The majority opinion holds that a court does not commit prejudicial error under Crim. R. 11 (C) (2) (c) when the judge fails to personally inform a defendant of the constitutional rights he waives when he pleads guilty. I disagree.

The majority holding is not supported by precedent. In *State* v. *Caudill* (1976), 48 Ohio St. 2d 342, this court ruled that the provisions of Crim. R. 11 (C) (2) must be scrupulously followed and that the court must have an oral dialogue with a defendant in order to determine if his waiver of rights is intelligently made. While *State* v. *Stewart* (1977), 51 Ohio St. 2d 86, held that error in the application of Crim. R. 11 (C) (2) is not always prejudicial, it does not support the majority's holding. Unlike *Caudill* and the instant cause, the *Stewart* case did not involve failure to personally inform a defendant of a constitutional right. Because the *Stewart* case is distinguishable from the case at hand and the *Caudill* ruling is not, precedent requires this court to find that the trial court's failure to scrupul-

ously comply with Rule 11 constitutes prejudicial error.

The *Caudill* opinion controls the instant cause. However, even if it did not, the error committed by the court below was not harmless. Under Crim. R. 11 (C) (2) (c), a court may not accept a plea of guilty or no contest unless it addresses the defendant "personally" and informs him of the rights he waives by submitting such a plea. In the instant cause, the court failed to inform the defendant personally of a number of rights including the right to trial by jury. Instead, it asked the defendant if he understood its explanation of those rights to someone else or if he wanted the court to give that explanation "again." A court taking such a shortcut commits more than an error in form. It fails to arrange for a "meaningful colloquy" with the defendant (*State* v. *Caudill, supra,* at page 347; *McCarthy* v. *United States* [1969], 394 U. S. 459), and it does so at a time when a defendant is likely to be more concerned with the sentence he is about to receive than with the rights he may unknowingly waive. (As a practical matter, it is unlikely that an individual waiting to plead and be sentenced will heed an explanation of rights addressed to someone else or risk annoying an apparently hurried judge by asking him to repeat that explanation.)

The shortcut taken by the trial court in the instant cause also harms the criminal justice system. Orally informing two or more defendants of their rights at once is a practice which is bound to be appealing to overworked judges and which is capable of unlimited expansion. For both reasons, it should not be encouraged. Moreover, when judges take shortcuts with waivers of constitutional rights they make the system vulnerable to successful post-conviction challenges. If the majority opinion sanctions a haphazard application of Crim. R. 11 in order to decrease the "immense burdens" under which the criminal justice system labors, its efforts are misguided.

Because I believe the majority sanctions a procedure which endangers the rights of defendants and will ultimately increase those very burdens on the criminal system which all of us wish to alleviate, I dissent.